## Case No. 3,256.

### The CORSICA.

### [6 Blatchf. 190.][1]

Circuit Court, S. D. New York. Oct. Term, 1868.[2]

COLLISION BETWEEN STEAM VESSELS —CHANGE OF COURSE.

Where two vessels, under steam, were crossing, so as to involve risk of collision, and vessel No. 1, which had vessel No. 2 on her own starboard side, apprehending danger, stopped and backed, until she had stern-way on in the water, and vessel No. 2, instead of keeping her course, changed it, so as to make a collision inevitable, and one occurred: *Held*, that vessel No. 2 was in fault, for violating the provisions of articles 14 and 18 of the act of April 29, 1864 (13 Stat. 58), and that, under the circumstances, the change of course by vessel No. 2 did not come within any of the qualifications in article 19 of the same act.

[Cited in The Sunnyside, Case No. 13,620.]
[See note at end of case.]

[Appeal from the district court of the United States for the southern district of New York.]

This was a libel in rem, filed in the district court, by [Samuel Schuyler] the owner of the steamer America, against the propeller Corsica, to recover for the damages caused to the America by a collision which occurred between the two vessels, in the harbor of New York, off the Battery, in the North river, near the Jersey shore, or about one-third of the way from it across the river, and opposite the Morris Canal basin, or the coal wharves near by, on the 9th of September, 1865. The district court decreed for the libellant [Case No. 12,495], and the claimants [the British and North American Steam-Packet Company] appealed to this court.

Cornelius Van Santvoord, for libellant.
Daniel D. Lord, for claimants.

NELSON, Circuit Justice. The collision, in this case, took place at mid-day, in an open river, in clear weather, and between two vessels which were in plain sight of each other. The case has been ably and earnestly argued, as might well be expected, from the character of the counsel, and the amount of property concerned, and, especially, from the fact, that it involves, to a considerable degree, the intelligence and skill of those who were in charge of the navigation of the vessels. I have, therefore, studied the case with a care and attention corresponding with its magnitude, and the interests involved; and shall proceed to state, in a few words, the conclusions arrived at.

The Corsica was descending the river, (having come out of her dock, next below the Jersey City ferry, on her way out to sea,) some three hundred yards off the Jersey shore. The America had come from the East

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming decree of the district court in Case No. 12,495. Decree of the circuit court affirmed by supreme court in The Corsica, 9 Wall. (76 U. S.) 630.]

river, and, after she had rounded the Battery, and when she was about off Castle Garden, she shaped her course diagonally across the river, to reach her dock, at the foot of Sussex street, on the Jersey shore, heading, however, somewhat south of it, for the purpose of getting inside of the vessels which were usually anchored outside, or in front, and of then moving along the shore or docks, up to her berth. This was the relative position of the two vessels, when they were discovered by the hands on board of each other respectively. The America had reached the middle of the river, or thereabouts, when this discovery was made. There is some conflict, in the testimony, as to the exact distance the Corsica was up the river, above the America, at this time. She was still descending, on her track, already stated, along the Jersey shore. But the better opinion, I think, is, that she was some three or four time her length above the America. The America continued a short distance on her course, and then, apprehending danger in attempting to cross the bows of the Corsica, stopped, and backed, until she had stern-way on in the water, which, upon the evidence, would, beyond all doubt, have avoided a collision; but, unfortunately, about the same time, or a little later, the Corsica starboarded her helm, turning her course eastward, directly toward the America, and rendering a collision inevitable. Her starboard bow struck against the starboard side of the America, near her forward gangway, in an oblique direction, inflicting severe injury.

The proof is clear, that, if the Corsica had kept her course down the shore, no collision could have taken place; and, also, that there was room between her and the shore, for her to have ported her helm, and to have passed even further inward. The error of the pilot and master of the Corsica consisted in not observing the rule of navigation established by law. Article 14 provides: "If two ships under steam are crossing, so as to involve risk of collision, the ship which has the other on her own starboard side shall keep out of the way of the other." Under this rule, the burden of avoiding the collision rested upon the America; and she took the proper measures to discharge that duty. Article 18 provides, that where, by the above rules, one of two ships is to keep out of the way, the other shall keep her course, subject to the next article (19), which provides, that, in obeying these rules, due regard shall be had to all dangers of navigation, and also to any special circumstances, which may exist in any particular case, rendering a departure from such rules necessary, in order to avoid immediate danger. The counsel for the Corsica has strongly urged, that that vessel, under the existing circumstances, comes within the qualification; and that her pilot or master had a right to assume that the America intended to cross his bows, in which event a collision would certainly have followed, if

the Corsica had not starboarded her helm. I do not doubt, that the pilot and master acted honestly under this belief, when the order to starboard was given. But I cannot forget, and they should not have forgotten, that it was the duty of the America to give way, and that of their vessel to keep her course; and, as there was opportunity for the America to take measures in fulfilment of this duty, it was a fault in the pilot and master of the Corsica not to have acted on this view. It was the departure from the rule that embarrassed the America, and led to the disaster. Acting under this rule, and carrying out its injunction, the America had disabled herself from remedying the error committed by the Corsica. She had stopped her headway, and was lying helpless in the water. Inasmuch as the movements she adopted would have prevented the misfortune, to permit special circumstances in the case to modify them or render them inefficient, would be such an administration of the rules as would operate to entrap the responsible vessel.

Decree affirmed.

[NOTE. The claimants appealed to the supreme court, where the decree of the circuit court was affirmed.

[Mr. Justice Bradley delivered the opinion, which was to the effect that it was apparent that the change of course on the part of the Corsica was the immediate cause of the disaster; that the burden of proof was upon her to show a sufficient cause in the conduct of the America to justify such a change; that the evidence failed to disclose conduct amounting to such a justification, and that, according to the account of the collision as given by the master of the Corsica, it occurred in consequence of her assuming to perform the duty which devolved on the America under the rules of navigation. The Corsica, 9 Wall. (76 U. S.) 630.]